UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MYRIAM ZAYAS,

               Plaintiff,

    v.

DEPARTMENT OF CHILDREN, YOUTH & FAMILIES et al.,

              Defendants.

Case No. C20-981 JLR-TLF

REPORT AND RECOMMENDATION

Noted for August 20, 2021

This matter comes before the Court on defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6). Dkt. 40. Plaintiff, proceeding *pro se*, brings this action under 42 U.S.C. § 1983 for alleged violations of her constitutionally protected rights. For the reasons set forth below, the Court should GRANT defendants' motion and dismiss plaintiff's complaint with leave to amend.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff commenced this action on June 18, 2020, alleging claims against various defendants including defendant McRae. Dkt. 1. Plaintiff later filed a fourth amended complaint that added Hopfauf as a defendant.[1] Dkt. 18. On October 19, 2020, the Court granted plaintiff's request to voluntarily dismiss all defendants except Hopfauf and

---

[1] The fourth amended complaint was submitted on 9/5/2020 and modified on 9/8/2020 to include defendant Hopfauf.

1    McRae. Dkt. 30. Plaintiff submitted a fifth amended complaint on October 22, 2020. Dkt.

2    32. Defendants filed a motion to dismiss for failure to state a claim. FRCP Rule 12(b)(6).

3    Dkt. 40.

4         The following facts are alleged in the fifth amended complaint and are taken as

5    true only for the purposes of reviewing this motion. *Cedar Point Nursery v. Shiroma*, 923

6    F.3d 524, 530 (9th Cir. 2019).

7    **A. Denial of equal protection based on Plaintiff's race**

8         Plaintiff alleges the defendants disadvantaged her because of her race and gave

9    the fathers of her children preferential treatment because they are African American.

10        The plaintiff alleges the defendants "handed her children to their fathers favoring

11   their African American race" and preferential treatment of the fathers had been ongoing

12   for 11 years. Dkt. 32 at 3[2]. Plaintiff also alleges, in approximately 2019, Hopfauf

13   "demanded the Plaintiff return him [plaintiff's son] to his father that is now physically and

14   emotionally abusing him" and Hopfauf "refused to hold a black man accountable for

15   abandonment of his own child." Dkt. 32 at 4.

16        Plaintiff alleges that defendants, "lack any evidence that the Plaintiff has ever

17   abused any of her children" and the reason for the removal of the plaintiff's children

18   from her care is either -- the plaintiff's failed urine drug test, or that plaintiff did not

19   provide a sample for urine drug testing. Dkt. 32 at 8. Plaintiff also alleges her urine drug

20   test was failed because she was using medication prescribed by a doctor, and she

21   asserts Child Protective Services (CPS) was aware of the plaintiff's use of prescription

22

23   _____

24   [2] The labels applied to the pages in the fifth amended complaint (Dkt. 32) are inconsistent, therefore citations reference the actual page number in the document as available on CM/ECF.

25

medication. Dkt. 32 at 4. Plaintiff alleges her son's father (in contrast with plaintiff's experience of not providing a sample) had one drug screening that resulted in a "no show" and defendants "allowed him to refuse treatment and refuse to complete services." Dkt. 32 at 8. Plaintiff alleges the defendants "gave him [the father] custody after he refused to complete [drug treatment] services for 6 years." Dkt. 32 at 5.

Plaintiff further alleges racism in the whole of CPS leadership and she contends that white, Hispanic, and Native American parents are treated with less regard in their proceedings with CPS than parents of other races. Dkt. 32 at 4. Additionally, plaintiff alleges she has never seen Asian, Samoan, Ethiopian, or Korean parents at the CPS offices "trying to get their children back." Dkt. 32 at 4. Plaintiffs further alleges the defendants harass families of certain races. Dkt. 32 at 4.

Plaintiff also alleges McRae "Only place[ed] her [Plaintiff's] children with African American families. Never giving the Plaintiffs family a chance." Dkt. 32 at 16.

### B. Denial of equal protection based on Plaintiff's gender

The plaintiff alleges the defendants disadvantaged her because of her gender and that the father of her child was given preferential treatment because he is a male.

Plaintiff alleges that defendants intentionally ignored a report stating her son's father abandoned her son and the defendants allowed the father to maintain parental rights because the father is a male. Dkt. 32 at 14. Plaintiff also claims her failed drug test was responded to differently by the defendants than both -- the father's "no show" urine drug test result -- and his alleged failure to complete or participate in drug treatment. Dkt. 32 at 8.

**C.  Denial of liberty interest in companionship with Plaintiff's child**

The plaintiff alleges that on or about March 17th, 2020, the King County Superior Court judge who approved removal of plaintiff's children from her care forged the signature of another judge at a shelter care hearing. Dkt. 32 at 10. Plaintiff further alleges she was not notified of the shelter care hearing until five months after the hearing was held and was not afforded a chance to be heard at the hearing. Dkt. 32 at 2, 11. Additionally, the plaintiff alleges the shelter care hearing was not added to the King County Superior Court's docket until the plaintiff notified court officials a shelter care hearing never occurred. Dkt. 32 at 2.

The plaintiff alleges Hopfauf knew she was not notified of the shelter care hearing and knew a King County Superior Court judge's signature was forged at the shelter care hearing. Dkt. 32 at 2. Additionally, plaintiff alleges Hopfauf conspired with other social workers to cover-up both the forgery and lack of notification regarding the shelter care hearing. Dkt. 32 at 10. Plaintiff alleges Hopfauf avoided her and instructed other CPS employees to avoid her in furtherance of this conspiracy. Dkt. 32 at 10. Additionally, the plaintiff alleges Hopfauf made no "efforts to fix the due process violation that occurred." Dkt. 32 at 10.

**D.  Failure of Defendant to Perform Duties as Proscribed by Washington State Law**

The plaintiff alleges that on or about February 19th, 2020 she was in a hospital with her then five-year-old daughter. Dkt. 32 at 9. The plaintiff alleges a doctor asked her to find a babysitter for her daughter, so she called Kelsey Owens, a social worker supervised by Hopfauf, to pick up her child. Dkt. 32 at 9. Plaintiff alleges Hopfauf

REPORT AND RECOMMENDATION - 4

directed Owens to refuse to pick up the child and the child had to "lay in the hospital bed next to her [plaintiff]" and "lay with the plaintiff and suffer." Dkt. 32 at 9.

The plaintiff alleges Hopfauf violated RCW 42.20.100, a Washington State law regulating the conduct of public officers, by directing Owens to refuse to pick up her daughter from the hospital. Dkt. 32 at 9, RCW 42.20.100.

**E. Impermissible seizure of Plaintiff's child for questioning**

The plaintiff alleges the Defendants "illegally seized her 5-year-old on March 12th, 2020 at her kindergarten class without probable cause, warrant or imminent danger" and she was never informed her daughter would be questioned. Dkt. 32 at 3. The plaintiff alleges the seizure and questioning of her daughter was a violation of the plaintiff's Fourth Amendment right. Dkt. 32 at 3-4.

**Analysis**

A. <u>Motion to Strike Opposition Briefs</u>

In response to defendants' motion, plaintiff filed six response briefs with attached exhibits. Dkt. 44, 47, 48, 50, 51, 56. Defendants have moved to strike plaintiff's response briefs (second through sixth) and all exhibits in accordance with Local Rule 7. Dkt. 49. The Court should strike Dkt. 47, 48, 50, 51 and 56, along with their attached exhibits to each of those briefs.

Pursuant to Local Rule 7(b), a party opposing a motion to dismiss shall file a single brief opposing the motion together with any supporting materials. LCR 7(b)(2). Plaintiff's status as a *pro se* litigant does not excuse her from these Local Rules because *pro se* litigants are required to follow the same rules of procedure that govern other litigants. *Ghazalia v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995).

1    Plaintiff filed six briefs opposing the motion to dismiss without asking the Court to

2   allow her to file supplemental briefing. The Court should strike plaintiff's supplemental

3   briefing (Dkt. 47, 48, 50, 51, 56) and proceed with Dkt. 44 as plaintiff's response brief.

4   The Court should also strike the exhibits attached to Dkt. 47, 48, 50, 51 and 56.

5    B.  Motion to Strike Amended Complaint

6    In response to the pending motion to dismiss, plaintiff filed two amended

7   complaints. Dkt. 52, 54. Defendants have filed motions to strike each of plaintiff's

8   amended complaints. Dkt. 53, 55. For the reasons set forth below, the Court should

9   grant defendants' motions to strike plaintiff's amended complaints.

10    Pursuant to Federal Rule of Civil Procedure 15(a), after an initial period for

11   amendment as of right, pleadings may be amended only with opposing party's written

12   consent or by leave of the court. Leave to amend should be freely given when justice so

13   requires. Fed.R.Civ.P. 15(a)(2); *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154

14   (9th Cir. 2014) ("[T]his policy is to be applied with extreme liberality.").

15    Plaintiff filed her amended complaints without filing a motion for leave to amend

16   as required by FRCP 15(a). Yet, plaintiff is a *pro se* litigant, and in the interest of

17   efficiency the Court should liberally construe plaintiff's amended complaints as motions

18   for leave to amend.

19    The Court must consider five factors when determining the propriety for leave to

20   amend: bad faith, undue delay, prejudice to the opposing party, futility of amendment,

21   and whether the plaintiff has previously amended the complaint. *Desertrain*, 754 F.3d at

22   1154; *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). The party opposing

23   amendment has the burden of showing that amendment is not warranted. *DCD*

24

25

1   *Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987*).* Futility of amendment

2   alone can justify denial of a motion to amend. *Johnson*, 356 F.3d at 1077.

3        Plaintiff's amended complaint (Dkt. 52) is a re-filed copy of the previous fifth

4   amended complaint she filed – the operative complaint (Dkt. 32). The seventh amended

5   complaint (Dkt. 54) is a copy of Dkt. 32 with some information redacted. Accordingly,

6   because the two proposed amended complaints are substantively identical to Dkt. 32,

7   the fifth amended, operative complaint, they suffer from the same deficiencies identified

8   in this Report and Recommendation and are equally subject to dismissal.

9        Based on the foregoing, the Court should strike the amended complaints at Dkts.

10  52 and 54 because they are duplicative of the operative complaint, subject to dismissal,

11  and are therefore futile.

12        C.  Judicial Notice and Documents Incorporated by Reference

13        Plaintiff attached a number of exhibits to Dkt. 44. Defendants have request that

14  the Court strike these documents. Dkt. 49. Additionally, defendants have requested the

15  Court take judicial notice of several documents. Dkt. 40.

16        Although a district court generally may not consider information outside the

17  pleadings when evaluating a CR 12(b)(6) motion to dismiss for failure to state a claim,

18  there are exceptions; the Court may consider documents that are subject to judicial

19  notice, and may consider documents that are within the boundaries of the incorporation-

20  by-reference doctrine. *Khoja v. Orexigen Therapeutics, Inc.,* 899 F.3d 988, 1002 (9th

21  Cir. 2018); *Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir. 2001).

22        Under Rule 201 of the Federal Rules of Evidence, the district court may notice

23  an adjudicative fact if it is "not subject to reasonable dispute"; this test is satisfied if the

24

25

1  fact is "generally known" or "can be accurately and readily determined from sources

2  whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)-(2). The

3  district court may "take judicial notice of matters of public record without converting a

4  motion to dismiss into a motion for summary judgment." *Lee v. City of Los Angeles,* 250

5  F.3d at 688. But the Court may not resolve disputes of fact or take notice of disputed

6  facts that exist in documents that are subject to judicial notice. *Kohja v. Orexigen*

7  *Therapeutics, Inc.,* at 999-1001.

8        Regarding the doctrine of incorporation by reference, a party may seek to apply

9  this doctrine and incorporate a document into a complaint "if the plaintiff refers

10  extensively to the document or the document forms the basis of the plaintiff's claims."

11  *United States v. Ritchie,* 342 F.3d 903, 907 (9th Cir. 2003). Even if the document is not

12  expressly referred to in a complaint, it would be proper to incorporate a document by

13  reference if the claim necessarily depends on the document. *Knievel v. ESPN,* 393 F.3d

14  1068, 1070-76 (9th Cir. 2005). Yet, if a document creates a defense to a well-pled

15  claim, but it did not necessarily form the basis of the of the complaint because the claim

16  did not depend on the document, then incorporation-by-reference does not apply. *Kojha*

17  *v. Orexigen Therapeutics, Incl,* at 1002-03.

18        1.  Plaintiff's Exhibits

19        For the reasons set forth below, the Court should strike the attachments that

20  plaintiff identifies as Exhibit 0429, Exhibit 0624, Exhibit 1102 and portions of Exhibit

21  0317. The Court should not strike the remaining attached documents.

22        Plaintiff's complaint states that she has evidence of defendants' alleged

23  misconduct. Dkt. 32 at 8. The amended complaint also cites to certain documents that

24

25

1    are not attached to the operative complaint. Dkt. 32 at 10, 12-14, 16. Some of the

2    documents that plaintiff attached to her response brief appear to be the documents that

3    plaintiff cites in her complaint and are therefore incorporated by reference.

4         The attachment that plaintiff attached as Exhibit 0429 is an email. Dkt. 44 at 14. It

5    is difficult to determine the context of the email because a majority of the information in

6    the document has been redacted. *Id*. The email does not appear to be related to the

7    claims raised by plaintiff. Therefore, the Court should strike the email because it is not

8    incorporated by reference to the complaint.

9         The attachment identified by plaintiff as Exhibit 0219 is a text message

10   conversation between Kelsey Owens and plaintiff regarding plaintiff's child. Dkt. 44 at

11   15-17. The exhibit also contains a drug screening report from Cordant Health Solutions.

12   Dkt. 44 at 18. Plaintiff references both documents in her complaint and bases her claims

13   on these documents. Dkt. 32 at 4, 9. Accordingly, because plaintiff has incorporated

14   both documents into her complaint, the Court should not strike these documents. .

15   *Khoja v. Orexigen Therapeutics, Inc.,* 899 F.3d 988, 1002 (9th Cir. 2018).

16        The documents plaintiff identifies as Exhibit 0317 includes the last page of a

17   Shelter Care Hearing Order (signed on March 17, 2020) by Commissioner Danieli as

18   well as Commissioner Danieli's application to serve as a King County District Court

19   Judge. Dkt. 44 at 20-22. The Shelter Care Hearing Order forms the basis of plaintiff's

20   claims and plaintiff references this document in her complaint. Dkt. 32 at 10.

21   Accordingly, this document is incorporated by reference to plaintiff's complaint. The

22   other two documents in Exhibit 0317 are not referenced by plaintiff's complaint and are

23

24

25

not related to plaintiff's complaint. Accordingly, the Court should strike pages 21 and 22 of Dkt. 44, but should not strike page 20 (the Shelter Care Hearing) of Exhibit 0317.

Plaintiff's attached document labeled Exhibit 0624 consists of a text message conversation between plaintiff and an unidentified social worker. Dkt. 44 at 23-26. It is unclear to whom plaintiff was speaking in the conversation and whether the conversation relates to any of the named defendant's alleged conduct. *Id.* Because it is unclear whether the conversation relates to this action, the Court should strike Exhibit 0624.

Finally, the document identified as Exhibit 1102 contains documents relating to plaintiff's application for a federally funded program. These documents do not appear to relate to plaintiff's complaint. Accordingly, the Court should strike Exhibit 1102.

Based on the foregoing discussion, the Court should strike Exhibits 0429, 0624, 1102 in their entireties and the last two pages of Exhibit 0317. The Court should not strike Exhibit 0219 and the first page of Exhibit 0317 because these documents are incorporated by reference into plaintiff's complaint. *Khoja v. Orexigen Therapeutics, Inc.,* 899 F.3d 988, 1002 (9th Cir. 2018).

### 2. Defendants' Exhibits

In support of defendants' motion to dismiss, defendants have submitted a request for judicial notice. Dkt. 40-1. The Court should grant defendants' request for judicial notice.

Defendants request that the Court take judicial notice of six exhibits: 1) Amended Dependency Petition date March 16, 2020 and filed before the King County Superior Court Juvenile Division; 2) Order to Take Child Into Custody and Place in Shelter Care

dated March 16, 2020 and filed before the King County Superior Court Juvenile Division; 3) Shelter Care Hearing Order, dated March 17, 2020 and filed before the King County Superior Court Juvenile Division; 4) Order Continuing Fact-Finding/Trial, dated July 6, 2020 and filed before the King County Superior Court Juvenile Division; 5) Pretrial Conference Order, dated August 24, 2020 and filed before the King County Superior Court Juvenile Division; 6) Order of Dependency dated October 8, 2020 and filed before the King County Superior Court Juvenile Division. Dkt. 40-1. Defendants also request that the Court take judicial notice of Revised Code of Washington section 13.34. *Id.*

All six documents that defendants introduced in their request for judicial notice are public records filed in the dependency hearing underlying this complaint. Dkt. 41. Accordingly, the Court may properly take judicial notice of these documents. However, the documents at Dkt. 41-1, 41-2, 41-4, and 41-5 are not incorporated into the complaint and do not form the basis of plaintiff's complaint. Therefore, the Court may only take notice that these documents were filed before the King County Superior Court Juvenile Division and the date they were filed, but should not take notice of disputed alleged facts contained in the documents.

The document presented as Dkt. 41-3 is a Shelter Care Hearing Order signed and dated on March 17, 2020. Dkt. 41-3. Plaintiff specifically cited this document in her complaint and incorporated the document itself into the complaint. Dkt. 32 at 2, 10, 11; Dkt. 44 at 19; see plaintiff's Exhibit 0317. Therefore, because plaintiff has incorporated the document into her complaint, the Court may consider the document as part of

1  plaintiff's complaint. *Khoja v. Orexigen Therapeutics, Inc.,* 899 F.3d 988, 1002 (9th Cir.

2  2018).

3          The document presented as Dkt. 41-6 is an Order of Dependency signed and

4  dated on October 8, 2020. Dkt. 41-6. Plaintiff's complaint cites to this document and

5  alleges that her due process claims arise from the hearing related to this order and the

6  Order of Dependency itself. Dkt. 32 at 2, 3, 10. The Court may consider this document

7  as part of plaintiff's complaint.

8          Finally, the Court should deny defendant's request that the Court take judicial

9  notice of RCW 13.34. Judicial notice of legislative facts, such as the applicability of a

10  statute is unnecessary. *Von Saher v. Norton Simon Museum of Art at Pasadena*, 578

11  F.3d 1016, 1021-22 (9th Cir. 2009) (citing *Toth v. Grand Trunk R.R.*, 306 F.3d 335, 349

12  (6th Cir. 2002) ("[J]udicial notice is generally not the appropriate means to establish the

13  legal principles governing the case.").

14          D.  Motion to Dismiss

15          When reviewing a motion pursuant to rule 12(b)(6), the Court must accept as true

16  "all well-pleaded allegations of fact in the complaint and construe them in the light most

17  favorable to the non-moving party." *Cedar Point Nursery v. Shiroma*, 923 F.3d at 530

18  (internal quotations omitted).  The court is not required to accept legal conclusions

19  couched as factual allegations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

20          To survive a 12(b)(6) motion, a complaint must contain sufficient factual matter to

21  "state a claim to relief that is plausible on its face." *Ashcroft,* 556 U.S. at 678 (*quoting*

22  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). A claim is plausible on its face if

23  the pleaded facts allow the court to draw the reasonable inference that the defendant is

24

25

1    liable for the misconduct alleged.  *Ashcroft*, 556 U.S. at 678.  When evaluating a

2    12(b)(6) motion, the court may only consider the complaint, materials incorporated into

3    the complaint by reference, and matters of which the court may take judicial notice.

4    *Cedar Point Nursery*, 923 F.3d at 530.

5         When a plaintiff appears *pro se* in a civil rights case, "the court must construe the

6    pleadings liberally and must afford plaintiff the benefit of any doubt." *Karim-Panahi v.*

7    *Los Angeles Police Dep't*, 839 F.2d 621, 624 (9th Cir. 1988). But this lenient standard

8    does not excuse a *pro se* litigant from meeting the most basic pleading requirements.

9    *See, American Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1107-08

10   (9th Cir. 2000).

11        42 U.S.C. § 1983 "affords a 'civil remedy' for deprivation of federally protected

12   rights caused by persons acting under color of state law." *Parratt v. Taylor*, 451 U.S.

13   527, 535 (1981) overruled in part on other grounds by *Daniels v. Williams*, 474 U.S. 327

14   (1986). To state a claim under Section 1983, a complaint must allege: (1) the conduct

15   complained of was committed by a person acting under color of state law; and (2) the

16   conduct deprived a person of a right, privilege, or immunity secured by the Constitution

17   or laws of the United States. *Id.* Section 1983 is the appropriate avenue to remedy an

18   alleged wrong only if both of these elements are present. *Haygood v. Younger*, 769

19   F.2d 1350, 1354 (9th Cir. 1985).

20        To state a claim under Section 1983, a plaintiff must set forth the specific factual

21   basis upon which the plaintiff claims each defendant is liable. *Aldabe v. Aldabe*, 616

22   F.2d 1089, 1092 (9th Cir. 1982). Vague and conclusory allegations of officials

participating in a civil rights violation are not sufficient to support a claim under Section 1983. *Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

### 1. Statute of Limitations

Defendants contend that plaintiff's claims against defendant McRae are barred by the statute of limitations. The Court should reject this contention.

42 U.S.C. § 1983 does not contain a statute of limitations. Therefore, the statute of limitations from the state cause of action most like a civil rights act is used. *Rose v. Rinaldi*, 654 F.2d 546, 547 (9th Cir. 1981). In Washington, the most analogous statute is RCW 4.16.080(2). *Rose*, 654 F.2d at 547 (applying RCW 4.16.080(2) to determine the statute of limitations for plaintiff's Section 1983 action). Plaintiff has three years to file an action from the date that the action accrued. RCW 4.16.080(2).

The statute of limitations for a Section 1983 action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001). The continuing violation theory applies to Section 1983 claims, allowing plaintiffs to seek relief for events outside of the limitation period. *Id.* A continuing violation is established when a plaintiff's claims arise from a series of related acts, one or more of which falls within the limitation period. *Green v. Los Angeles County Superintendent of School*, 883 F.2d 1472, 1480 (9th Cir. 1989).

Plaintiff's states that some of defendant's McRae's "wilful misconduct" occurred from 2009 to 2015. Dkt. 32 at 8. However, the complaint also alleges that the conduct has continued into 2020. *Id.* Plaintiff also alleges that defendant McRae conspired with defendant Hopfauf to deprive her civil rights in 2020. *Id.* at 9. Reading plaintiff's complaint with the required liberality and accepting the allegations as true for purposes

of this motion, the Court should interpret plaintiff's allegations as being an assertion that defendant McRae participated in a continuing violation that extended into 2020. Accordingly, because the plaintiff's allegations (construed liberally) assert a related series of events and some of acts in the alleged series of wrongful conduct occurred within the last three years, plaintiff's complaint is not barred by the statute of limitations, for purposes of this FRCP 12(b)(6) motion.

### 2. Equal Protection Claims

Plaintiff's complaint does not allege a cause of action for a denial of her Fourteenth Amendment right to equal protection based on her race or gender.

To allege an equal protection claim violation, the plaintiff has the burden of asserting facts proving the existence of purposeful discrimination. *Washington v. Davis,* 426 U.S. 229, 240-241 (1976). Additionally, to sustain a claim of discrimination, plaintiff is required to show that a decision maker had undertaken "a course of action 'because of,' not merely 'in spite of,'" negative effects on an identifiable group. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009) (quoting *Personnel Administrator of Mass. v. Feeney,* 442 U.S. 256, 279 (1979)).

To state an equal protection claim based on a racial classification, a plaintiff must allege facts demonstrating the defendants acted with the intent or purpose to treat them differently than similarly situated individuals; if sufficient factual allegations are established, the defendants would need to show that the classification was narrowly tailored to further a compelling governmental interest to justify the disparate treatment. *Fisher v. University of Texas at Austin,* 570 U.S. 297, 309-310 (2013). To state an equal protection claim based on sex, a plaintiff must allege facts demonstrating the

1    defendants acted with the intent or purpose to treat them differently than similarly

2    situated individuals; if sufficient factual allegations are established, the defendants

3    would need to "demonstrate an exceedingly persuasive justification for that action." *U.S.*

4    *v. Virginia,* 518 U.S. 515, 531 (1996) (internal quotations and citations omitted).

5         Plaintiff alleges she was treated differently than the fathers of her children in

6    several ways. For example, plaintiff alleges her failed urine drug test contributed to the

7    loss of custody of her children, but a father's "no show" drug test had no consequences.

8    Dkt. 32 at 8. Additionally, the plaintiffs alleges the defendants harass families of certain

9    races and only placed the plaintiff's children with African American families, disfavoring

10   the plaintiff's family. Dkt. 32 at 4, 15-16.

11        The plaintiff's allegations, if taken as true, establish that she was treated

12   differently than the fathers of her children. But the plaintiff does not state any facts that

13   directly or indirectly show the defendants purposefully discriminated against her; there

14   are no assertions that any defendant acted with knowledge that because of their acts or

15   omissions, she would be suffering adverse consequences as a result of classification

16   based on race or sex. Plaintiff has not alleged any defendant acted, or failed to act

17   "because of, rather than in spite of" her race or gender. Plaintiff's conclusory allegations

18   of disparate treatment are insufficient to state an Equal Protection claim.

19        Based on the foregoing, the Court should dismiss plaintiff's Equal Protection

20   claims with leave to amend.

21

22

23

24

25

### 3.  Due Process Claims

Plaintiff's amended complaint alleges that the defendants have violated her Due Process Rights in connection with the State's removal of her child. For the reasons set forth below, the Court should dismiss plaintiff's due process claims.

The Fourteenth Amendment guarantees parents and children will not be separated without due process except in emergencies. *Kirkpatrick v. Cnty. of Washoe*, 843 F.3d 784, 788-89 (9th Cir. 2016). "Officials may not remove children from their parents without a court order unless they have information at the time of the seizure that establishes reasonable cause to believe that the child is in imminent danger of serious bodily harm." *Keates v. Koile*, 883 F.3d 1228, 1236 (9th Cir. 2018) (internal quotations omitted). The specific procedural protections constituting adequate Due Process are flexible and depend on the individual situation, but a fundamental tenant of due process is the right to be heard before deprivation of some type of interest. *Mathews v. Eldridge,* 424 U.S. 319, 333-334 (1976).

Plaintiff alleges Defendant Hopfauf instructed social workers to remove plaintiff's child without providing her due process. Dkt. 32 at 9-10. Plaintiff also alleges that two judges have conspired with state officials, including Defendants Hopfauf and McRae, to deprive plaintiff of due process by preventing her from participating in a shelter care hearing and failing to give her notice of the hearing. Dkt. 32 at 1-3, 9, 11. Next, the complaint alleges that a judge held a "fake" shelter care hearing and forged another judge's name on the order. *Id.* at 10. Plaintiff further alleges that Defendant Hopfauf covered up this conduct and/or instructed her social workers to cover this conduct and

1   ignore plaintiff. *Id.* Finally, the complaint contends that Defendant Hopfauf made no
2   remedial efforts to fix the due process violation that occurred. *Id.* at 10-11.

3       Plaintiff's allegations that no hearing was held before the removal of her child and
4   that she was not allowed to participate in any hearing, are contradicted by the evidence
5   that plaintiff has incorporated into her complaint.

6       First, plaintiff attached a copy of the docket from her child's dependency action to
7   the complaint. Dkt. 32 at 22. The docket indicates that plaintiff submitted a declaration,
8   motions and briefings on the record in the action. *Id.* Additionally, the Shelter Care
9   Hearing Order indicates that plaintiff was present at the hearing and stated an
10  appearance on the record. Dkt. 41-3 at 2. Similarly, the Order of Dependency that
11  plaintiff cites in the complaint also indicates that plaintiff participated in the hearing. Dkt.
12  41-6 at 1.

13      It appears from plaintiff's own documents – incorporated into her claims asserted
14  in the fifth amended complaint -- that plaintiff was given an opportunity to participate in a
15  hearing before her children were removed from her custody and that the child was not
16  removed without court order. Based on the foregoing, it is unclear how plaintiff's due
17  process rights have allegedly been violated. Plaintiff's conclusory allegations that the
18  shelter care hearing was "fake" and that defendant Hopfauf was somehow aware that
19  the hearing was fake are insufficient to state a Section 1983 claim without further factual
20  development.

21      The Court should dismiss plaintiff's Due Process claims with leave to amend.

22

23

24

25

REPORT AND RECOMMENDATION - 18

### 4. Search and Seizure Claims

Plaintiff's complaint alleges that the defendants violated her Fourth Amendment Rights by unlawfully interrogating her daughter "without probable cause, warrant or imminent danger" and without informing plaintiff. Dkt. 32 at 3-4, 16. Plaintiff's claims based on the alleged interrogation of her child should be dismissed.

The United States Constitution protects the parent-child relationship from unwanted interference by the state. *Kirkpatrick v. Cnty. of Washoe*, 843 F.3d 784, 788-89 (9th Cir. 2016).The Fourteenth Amendment guarantees that parents and children will not be separated by the state without due process except in an emergency. *Id* at 789. The Fourth Amendment guarantees a child's right to be secure in their person against unreasonable searches and seizures without a warrant. *Id*. These rights are personal and cannot be asserted vicariously. *Mabe v. San Bernadino Cnt.*, 237 F.3d 1101, 1111 (9th Cir. 2001). Accordingly, a parent cannot bring their own claims based on an alleged violation of their child's Fourth Amendment Rights. *Id*.

Plaintiff's complaint alleges that the defendants violated *her* rights by allegedly questioning her child. Plaintiff's child is not a party to this action and there is no indication that plaintiff is bringing this action as the representative on behalf of her child. Accordingly, plaintiff lacks standing to bring claims on her own behalf for alleged violations of her child's Fourth Amendment Rights.

Based on the foregoing, the Court should dismiss plaintiff's claims based on the alleged questioning of her daughter, without prejudice.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

### 5.  18 U.S.C. § 242 and RCW 42.20.100 Claims

Plaintiff's complaint alleges two causes of actions concerning violation of criminal statutes. The Court should dismiss plaintiff's 18 U.S.C. § 242 and RCW 42.20.100 claims with prejudice.

18 U.S.C. § 242 (Deprivation of rights under color of law) and RCW 42.20.100 (Failure of duty by public officer a misdemeanor) are both criminal statutes. A private right of action does not exist for all injuries caused by violations of the criminal code. *Cent. Bank, N.A. v. First Interstate Bank, N.A.*, 511 U.S. 164, 190 (1994). Unless "congressional intent can be inferred from the language of the statute, the statutory structure, or some other source" the Court will not imply a private remedy for the statute. *Thompson v. Thompson*, 484 U.S. 174, 179 (1988). Neither statute creates a private right of action nor gives rise to civil liability. *Allen v. Gold Country Casino*, 464 F.3d 1044, 1048 (9th Cir. 2006) (18 U.S.C. § 242); *Kerner v. Seattle Police Dep't*, No. 18-cv-1737-JCC, 2019 WL 1922925 at *4 (W.D. Wash., April 30, 2019) (RCW 42.20.100).

The Court should dismiss plaintiff's 18 U.S.C. § 242 and RCW 42.20.100 claims with prejudice.

### 6.  42 U.S.C. § 1985 Claims

Plaintiff's complaint fails to state a claim under 42 U.S.C. § 1985 and should therefore be dismissed.

A plaintiff cannot state a claim that defendants engaged in a conspiracy to violate their Section 1985 rights unless they also allege a plausible underlying claim for deprivation of rights under Section 1983. *See, Caldeira v. Cnty. of Kauai*, 866 F.2d 1175, 1182 (9th Cir. 1989) ("the absence of a section 1983 deprivation of rights

precludes a section 1985 conspiracy claim predicated on the same allegations."), *cert. denied*, 493 U.S. 817 (1989). Plaintiff has failed to allege a Section 1983 claim, accordingly, plaintiff's Section 1985 claim is equally deficient.

## LEAVE TO AMEND

When a pro se litigant's complaint fails to state a claim upon which relief may be granted, the Court generally grants the opportunity to amend the complaint unless amendment would be futile or subject to dismissal. *Lucas v. Dep't of Corrections*, 66 F.3d 245, 248 (9th Cir. 1995); *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991).

While plaintiff's complaint fails to allege sufficient facts to state a cognizable Section 1983 claim, it does not appear that amendment would be futile in this action. Accordingly, the undersigned recommends that the Court grant plaintiff leave to amend.

**CONCLUSION**

Based on the foregoing, the undersigned recommends that the Court GRANT defendant's motion to dismiss for failure to state a claim with leave to amend

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); Federal Rule of Civil Procedure (FRCP) 72(b); *see also* FRCP 6. If objections are filed, the parties shall have **fourteen (14) days** from the service of the objections to file a response. FRCP 72(b)(2). Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the above time limit, the Clerk shall set this matter for consideration on **August 20, 2021**, as noted in the caption.

Dated this 6th day of August, 2021.

Theresa L. Fricke
United States Magistrate Judge